Opinion

per curiam:

This case was referred by the court, pursuant to Rule 45 (c), to the Honorable Marion T. Bennett, a commissioner of the court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed July 2, 1956. When more than 15 days elapsed after the filing of this report and neither party gave notice in writing of an intention to except to the commissioner’s findings or recommendations, the defendant filed a motion for judgment in accordance with the recommendations of the commissioner. Since the court agrees with the recommendations and findings of the commissioner, as hereinafter set forth, it hereby adopts the same as *622 tbe basis of its judgment in this case, and plaintiffs’ petition will be dismissed.
It is so ordered.
OPINION OP THE COMMISSIONER
This is an action to recover $20,128.10 representing the purchase price of certain property in McLean County, North Dakota, which the United States allegedly agreed to purchase from the plaintiffs in trust for the Three Affiliated Tribes of the Fort Berthold Indian [Reservation, North Dakota, pursuant to the terms of a written offer to sell which the plaintiffs claim was accepted by the United States.
The plaintiffs own 80.07 acres of improved agricultural land, subject to certain outstanding mineral rights and interests, located near the Fort Berthold Indian [Reservation. The reservation itself is under the direct supervision of the superintendent of the Fort Berthold Indian Agency at Elbo-woods, North Dakota, and the agency in turn is under the jurisdiction of the area director of the Aberdeen area office which is located at Aberdeen, South Dakota.
The Indian Reorganization Act of 1934, known as the Wheeler-Howard Act (48 Stat. 984,25 U. S. C. 465), authorized the Secretary of the Interior to acquire lands for Indians through purchase and other means. The authority conferred on the Secretary was delegated by him to the Commissioner of Indian Affairs in January 1949 by Secretarial Order No. 2508 (14 F. R. 258-260). Order No. 551, dated March 29, 1951 (16 F. R. 2939-2940), delegated this authority to the area directors. At the time pertinent here, only the director of the Aberdeen area office had authority to accept any offer submitted by the plaintiffs to sell their land in trust for Indians of the Fort Berthold Reservation.
On July 2,1953, plaintiff John Slobojan visited the Aberdeen area office to inquire about an offer plaintiffs had made to the Fort Berthold Indian Agency on April 17,1953, to sell their land for $20,123.10. The agency had forwarded the offer together with abstracts of title and a proposed deed to the area office for consideration, and had recommended acceptance of the offer. Mr. Slobojan was informed that the offer was unacceptable to the area office. While at the area *623 office a second offer, clarifying mineral rights involved, was prepared and typed on a printed form adopted by the Bureau of Indian Affairs for use in transactions involving the purchase of lands for Indians. Mrs. Slobojan was not with her husband at the time so he took the original and four copies of the new offer, dated July 2,1953, home with him. Plaintiffs subsequently executed the new offer and turned the same over to the Fort Berthold Indian Agency, which in turn forwarded the papers to the Aberdeen area office.
Plaintiffs’ offer of July 2, 1953, provided that it was to become effective upon acceptance and contemplated communication of acceptance to the offerer by providing that notice thereof should be mailed to Mr. John Slobojan, Garrison, North Dakota.
In a memorandum to the superintendent of the Fort Berth-old Agency the area director on July 3, 1953, noted that a major portion of the proposed purchase price represented an investment in improvements rather than in land, the value of improvements would depreciate and there were more improvements than needed by a single operator. It was stated that this would represent a considerable investment for the tribe but that the area office had no particular objections if the property was worth the appraisal and the tribe was aware of the potential in depreciation of the buildings. By telephone on July 8 plaintiffs sought a report on the status of their offer. The lawyer who made the call for them was told it was still being processed. This advice was given by Mr. Bex Barnes, area realty officer. Plaintiffs or their attorneys at no time talked to the area director. Following a report by the superintendent on July 16, 1958, the area director on July 23, 1953, endorsed an acceptance on the offer, subject to the terms and conditions named therein.
Later that same day, July 23, and prior to any notification being given to plaintiffs by mail or other means that their offer had been accepted, the superintendent of the agency called at the area office on other business and learned of the acceptance. • The superintendent at this time was against acceptance and after discussion with the area director was instructed to take the offer back to the agency for resubmission to the tribal council and to make further recommendations. *624 In the meantime it was agreed that plaintiffs would not be notified of any acceptance. Plaintiffs were notified that the tribal council would consider the matter on August 6, 1953. Mr. Slobodan testified that he was told by the agency superintendent, on a date not established by the evidence, not to assume the offer would be accepted and to make no deals relying on such an assumption. After discussion the tribal council voted against purchasing plaintiffs’ property. This fact was made known to the area director, who on August 12.1953, noted on the offer the following language above his signature, “The acceptance of this offer is hereby rescinded.”
Plaintiffs were notified by registered letter on August 14, 1953, from the area director that their offer of July 2, 1953, was disapproved. The offer was not returned to plaintiffs at this time but was mailed to plaintiffs’ attorneys on August 27.1953, in response to a letter requesting its return. It was at this time that plaintiffs first learned of defendant’s endorsement of an acceptance upon the offer.
Was plaintiffs’ offer to sell accepted in the legal sense? Plaintiffs say that when the area director endorsed his acceptance on the offer, the minds of the parties met and there was a valid, binding contract. Plaintiffs concede that the area director was the only official authorized to accept the offer. So, the telephone conversation between plaintiffs’ attorney and Mr. Barnes, who did not represent he had the authority, could not have bound defendant even had we found that Barnes said the offer had been accepted, which is not a fact and was not a fact at the time of the conversation. If the offer had actually been accepted in writing at the time of the telephone conversation and plaintiffs were told of it and relied upon it, they would be in a better position. But, those are not the facts. The conversation was on July 8 and the written acceptance on July 23. Plaintiffs first learned about it sometime after August 27, 1953, but in the meantime had been told in writing that their offer was rejected. The acceptance was rescinded on August 12. Only an authorized agent can bind the Government. Federal Crop Insurance Corp. v. Merrill, 332 U. S. 380, 384 (1947); Charles W. Kelly v. United States, 116 C. Cls. 811, 91 F. Supp. 305 (1950), certiorari denied 340 U. S. 850; Gay Street Cor *625 poration v. United States, 130 C. Cls. 341, 127 F. Supp. 585 (1955); Ship Construction & Trading Co., Inc. v. United States, 91 C. Cls. 419, 456 (1940), certiorari denied 312 U. S. 699. Further, contracts to sell real estate must be in writing under the North Dakota Statute of Frauds and they take effect on their delivery (1N. D. Kev. Code (1943), Title 9, § 9-0604-8). The very form used by the parties in this case also shows such was intended. The telephone conversation has no weight in plaintiffs’ favor. The real issue, therefore, seems to be whether the fact that no notice of acceptance by the area director on July 23, 1953, was given to the plaintiffs until after they received notice the offer had been disapproved on August 14, 1953, constitutes a valid defense for defendant. We think it does.
The only manner in which a valid contract could come about as a result of plaintiffs’ offer was for the area director to accept in writing, as by his endorsement on it, and by mailing notice of the acceptance to Mr. John Slobojan as provided by the offer. The first step was taken but the second was not. Therefore, the offer was not accepted as contemplated. It is reiterated that, in fact, written notice of acceptance aside, plaintiffs were not notified of acceptance in any manner prior to notice of rejection of the offer.
The general rule is stated in 17 C. J. S. Contracts, p. 385.
§ 45. COMMUNICATION OF ACCEPTANCE.
Acceptance of an offer to be effective in completing a contract, must, as a rule, be communicated to the offerer or be put in the course of communication by an act.
A similar expression of this rule may be found in 12 Am. Jur., Contracts, p. 535, as follows:
§ 41. In the case of an offer which requires a reciprocal promise, it is clear that mental determination to accept is insufficient to bind the party who makes the offer. To constitute acceptance of such an offer, there must be an expression of the intention, by word, sign, writing, or act, communicated or delivered to the person making the offer or his agent. A mere private act of the person to whom the offer is made does not constitute acceptance. For instance, a mere proposal to sell does not become a sale until accepted and notice of acceptance given the proposer. * * *
*626 § 63. (p. 553) Delivery. * * * Thus, an undelivered written acceptance of an offer to sell land upon which no payment has been made, does not bind the purchaser and, therefore, the offer may be withdrawn.
See, also, 55 Am. Jur., Vendor and Purchaser, p. 506-7.
The Federal courts follow the principles set forth above and hold that where the validity of a bilateral contract is involved it is necessary that acceptance of the offer be communicated to the offerer before a valid and binding contract is made. Burton v. United States, 202 U. S. 344, 384-385 (1906); Dickey v. Hurd, 33 F. (2d) 415, 418 (C. A. 1, 1929), certiorari denied 280 U. S. 601; Barnebey v. Barron G. Collier,, Inc., 65 F. (2d) 864, 868 (C. A. 8, 1933); Shubert Theatrical Co. v. Rath, 271 Fed. 827, 833-834 (C. A. 2, 1921). In the case of Reynolds v. Maples, 214 F. (2d) 395, 398 (C. A. 5, 1954), it was held that an option must be exercised in the manner prescribed before it can become a binding contract for the sale of property. This court has recently held that even if a letter containing an acceptance of an offer is mailed, the acceptance is not final until the letter reaches its destination, and can be withdrawn at any time prior to receipt by the offerer. Rhode Island Tool Company v. United States, 130 C. Cls. 698, 128 F. Supp. 417 (1955); Harvey Franklin Dick v. United States, 113 C. Cls. 94, 82 F. Supp. 326 (1949).
The law of North Dakota, where the plaintiffs’ property is located, specifically requires that an acceptance of an offer must be communicated to the offerer in order to create a binding contract. 1 N. D. Kev. Code (1943), Title 9, Contracts and Obligations, provides in part as follows:
Ch. 9-03. Consent.
Sec. 9-0318. Mode of Communication of Acceptance. If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to. In other cases any reasonable and usual mode may be adopted.
Sec. 9-0319. When Consent Comrmmicated. Consent is deemed to be communicated fully between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer in conformity to section 9-0318.
Ch. 9-06. Formation of Contract.
*627 Sec. 9-0608. Written Contract Takes Effect on Delivery. A contract in writing takes effect upon its delivery to the party in whose favor it is made or to his agent.
See Hultberg v. City of Garrison, 79 N. D. 356, 56 N. W. (2d) 319 (1952); Horgan v. Russell, 24 N. D. 490, 140 N. W. 99 (1913); Shellburg v. Wilton Bank, 39 N. D. 530, 167 N. W. 721 (1917); Beiseker v. Amberson, 17 N. D. 215, 116 N. W. 94 (1908); Reeves & Co. v. Bruening, 13 N. D. 157, 100 N. W. 241 (1904).
Defendant raises the point that, assuming there was a valid enforceable contract, the proper measure of damages for its breach would be the difference between the contract price and the market value of the property at the time of breach, that is, the difference between the purchase price provided in the offer of July 2,1953, and the market value of the property on August 14, 1953, when plaintiffs were notified the offer had been rejected. There was no evidence on the issue of damages. Plaintiffs put into evidence a deed dated September 22, 1953, covering the property in question, and demand the full purchase price of $20,123.10. Defendant says this is a suit for specific performance and that such a suit cannot lie against the United States. Plaintiffs concede that a decree of specific performance cannot be had against the United States but say this is not such a suit. In view of what has been said above as to the fact that defendant did not communicate its acceptance until after plaintiffs were informed that their offer had been rejected, and in view of the fact that at no time were plaintiffs told by anyone with proper authority that their offer had been or would be accepted, but on the contrary were told not to assume the deal would go through, it is unnecessary to pass on the issues arising out of possible damages.
FINDINGS OE FACT
1. The plaintiffs, husband and wife, own 80.07 acres of improved agricultural land, subject to certain outstanding mineral rights and interests, which they purchased in 1929. The property is located in McLean County, North Dakota, approximately 31 miles southwest of Garrison, North Dakota, near the Fort Berthold Indian Keservation. At the time *628 material in this case, plaintiffs’ regular mailing address was Garrison, North Dakota.
2. The Fort Berthold Indian Reservation, which contains approximately 400,000 acres, is located in the west central part of North Dakota. The reservation is under the direct administrative supervision of the superintendent of the Fort Berthold Indian Agency at Elbowoods, North Dakota. The agency, in turn, is under the immediate jurisdiction of the area director of the Aberdeen area office with supervision over all Indian reservations, agencies and facilities in North Dakota, South Dakota and Nebraska. The Aberdeen area office is at Aberdeen, South Dakota, approximately 450 miles south of the Fort Berthold Indian Agency.
3. The Indian Reorganization Act of 1934, known as the Wheeler-Howard Act (act of June 18,1934,48 Stat. 984, 25 U. S. C. 465) authorized the Secretary of the Interior, in his discretion, to acquire lands for Indians through purchase, relinquishment, gift, and other means, and provided that the title to any such lands should be taken in the name of the United States in trust for the Indian tribe or individual for whom the land was acquired.
In January 1949 the Secretary of the Interior, by Secretarial Order No. 2508 (14 F. R. 258-260), delegated his authority to acquire lands for Indian tribes and individual Indians to the Commissioner of Indian Affairs. Order No. 551, dated March 29,1951 (16 F. R. 2939 — 2940), delegated to the area directors the authority the Commissioner of Indian Affairs had received from the Secretary of the Interior to acquire lands for Indian tribes and individuals, as follows:
Sec. 3. Authority of area directors. The area directors may exercise the authority of the Commissioner of Indian Affairs in the following classes of matters:
FUNCTIONS RELATING TO INDIAN LANDS AND MINERALS
Sec. 8. Land acquisitions. The approval of the purchase of lands for individual Indians and Indian tribes. This authority extends to and includes the acceptance of options for the acquisition of lands and the authorization to disburse restricted individual Indian money to complete the acquisition of lands for individual Indians.
4. On April 17,1953, plaintiffs made a written offer to sell their land and improvements to the United States for the *629 sum of $20,123.10. On April 24, 1953, plaintiffs executed and delivered to defendant, in trust for tbe Three Affiliated Tribes of the Fort Berthold Indian Reservation, a warranty deed and abstracts of title. The Fort Berthold superintendent had recommended acceptance of the offer on May 12, 1953. On July 2, 1953, plaintiff John Slobojan went to the Aberdeen area office to inquire about the status of the offer. He was told by Mr. Rex Barnes, the area realty officer, that the offer and proposed deed were ambiguous with respect to the mineral rights and interests which were intended to be conveyed and were not acceptable. Mr. Slobojan has at no time had any conversation with the area director, J. M. Cooper.
5. At the suggestion of Mr. Barnes, a second offer clarifying and setting forth in detail the nature, quantity and extent of the mineral rights and interests to be conveyed and reserved was prepared and typed on a printed form adopted by the Bureau of Indian Affairs for use in purchase of lands for Indians. Since Mrs. Slobo j an was not with her husband at the time, an original and four copies of the offer were furnished to Mr. Slobojan on July 2,1953, and later executed by plaintiffs in the office of their attorney in Garrison, North Dakota. A memorandum about the rejection of the offer of April 17 was sent by the area director to the superintendent of the Fort Berthold Indian Agency on July 3,1953, together with a copy of the new offer which had been prepared while Mr. Slobojan was at Aberdeen. It was stated in the memorandum that Mr. Slobojan would call at the agency to deliver the new offer or option. It was further stated that there was an error in the appraisal report. Suggestion was made that a new resolution should be adopted setting forth the reservation of minerals as it appeared in the new option. When these actions were taken, it was directed that the option and other documents should be submitted to the area office with recommendations. The memorandum also commented upon the visit of Mr. Slobojan to the area office and upon the fact that the major portion of the purchase price represented an investment in improvements rather than in land and that the valuation should be considered by the agency superintendent’s staff. The area office indicated no *630 particular objection to the acquisition of the land if it was worth the amount indicated by the appraisal and if the tribe was made aware of the fact that the buildings would eventually depreciate in value. This memorandum was prepared for signature of the area director by Rex Barnes, area realty officer, and was signed by the director, J. M. Cooper.
6. Pertinent parts of the offer of July 2,1953, as prepared in the area office on the printed form supplied by that office and as executed by the plaintiffs, follow:
WheReas, the United States of America is acquiring land for Indian purposes under the provisions of the Act of June 18,1934 (48 Stat. 984).
1. Now, TheRefoee, in consideration of the examination and appraisal by the United States of the lands hereinafter described and other good and valuable considerations which are hereby acknowledged as received, the undersigned owners offer to sell and convey to the United States of America in fee simple absolute the following described land:
Lot 1, Sec. 2,_T. 147 N., R. 89 W., Í5th P. M., except an undivided % interest in and to all oil, gas and other minerals heretofore conveyed and reserving unto the vendors (optionors) an undivided % interest in all oil, gas and other minerals for a period of 20 years from April 17, 1958, or as long thereafter as production in commercial quantities obtained during said 20-year period continues.
NE/4 SW/4, Sec. 36, T. 148 N., R. 89 W., 5th P. M., reserving unto the vendors (optionors) an undivided % interest in all oil, gas and other minerals for a period of 20 years from April 17, 1953, or as long thereafter as. production in commercial quantities obtained during said 20-year period continues,
together with all buildings and improvements thereon and rights appurtenant thereto. The price shall be the sum of $20,123.10 for the tract as a whole, it being estimated to comprise 80.07 acres, it being understood that a variation of 5% from the estimated acreage will alter the total price to the extent of the acreage less than or exceeding this permissible variation. The price change in this event will be figured on the basis of the average price per acre determined from the total price and the estimated acreage above given.
If the exact acreage is to be determined by the Government, this may be done by survey, from existing Government surveys, or plats, or from other data.
*631 2 # * ❖
3. The Secretary shall, by written notice given to the vendors at any time after the acceptance of this offer, require the vendors to furnish acceptable certificates or abstracts of title, and after the required additional evidence of title has been procured and recorded, to have the same extended and recertified to show indefeasible title in the United States: Provided, that if the vendors fail or refuse to furnish such abstracts or certificates within 60 days after the aforesaid notice, such abstracts or certificates and such additional evidence of title as may be required, may be procured by the United States. ^ * *
5. This offer may be accepted by the Secretary of the Interior under authority granted by the Act of June 18, 1931 (48 Stat. 984). Payment of the purchase price is to be made out of such funds as may be available from appropriations heretofore or hereafter made for the purpose of completing this purchase; however, no liability shall be incurred hereunder because of the insufficiency of funds for this purchase. This offer shall remain open for 4 months, and shall remain open an additional 2 months, unless 30 days prior to the original expiration date notice is communicated to the Secretary that this extension shall not be effective.
6. This offer, when accepted, shall constitute a binding contract for the purchase and sale of the lands described herein, according to the terms and conditions of this offer.
Y. * * * (Same as paragraph 6.)
0 •!*
❖ % #
The risk of loss or damage to all or any part of the property by fire or other cause until the acceptance of the title and deed by the Secretary of the Interior or his duly authorized representative is assumed by the vendors. In the event such loss or damage occurs, the Secretary, in his discretion, may refuse to accept the conveyance and terminate the contract without liability, or he may accept the conveyance of title to such property subject to an equitable adjustment of the purchase price. Witnesses: Signed:
(Sgd) Kobert Yogel (Sgd) John Slobojan
(Sgd) Yvonne Heisler (Sgd) Katie Slobojan
Mail notice of acceptance to:
Name: Mr. John Slobojan
Address: Garrison, North Dakota
*632 7. The superintendent proceeded to carry out the instructions in the area director’s memorandum of July 3,1953, mentioned in finding 5. On July 16, 1953, the superintendent sent a memorandum to the area director transmitting a tribal resolution, appraisal and inspection report as requested. It was at approximately this time when the superintendent, whose authority in the matter was limited to making a recommendation for or against the proposed purchase, told Mr. Slobodan that in view of the location of the land and the investment in it that he did not think it would be a good buy for the tribe, and not to make any deals on the assumption the offer would be accepted. Plaintiff John Slobodan testified that the agency superintendent never gave him any encouragement that the offer of July 2,1953, would be accepted.
8. While the matter was still before the Fort Berthold superintendent for review and recommendation, a telephone call was made on July 8, 1953, by Attorney Jack Williams, at the request of John Slobodan, to Mr. Barnes at the Aberdeen area office, to ascertain the status of the offer of July 2, 1953. Mr. Williams was informed by Mr. Barnes that the matter had been referred to the Fort Berthold Indian Agency for reconsideration and the resubmission of recommendations and that he was in no position to make any definite commitment with respect to the plaintiffs’ offer. Plaintiffs, however, gained a contrary impression and Mr. Williams testified that Barnes said the matter had been approved and would be sent to the Fort Berthold Indian Agency and that Mr. Slobodan would be notified. No inquiry was made as to whether Barnes had any authority to bind the Government or as to what his position was at the area office. Mr. Barnes did not represent that he was the area director or that he had his authority.
9. On July 23, 1953, J. M. Cooper, the area director, after discussing the proposed acquisition of the plaintiffs’ property with Mr. Barnes and reviewing the history of the negotiations, endorsed an acceptance at the foot of the plaintiffs’ offer of July 2,1953, as follows:
This offer is hereby accepted this 23rd day of July, 1953, subject to the terms and conditions named therein, *633 pursuant to delegation of authority contained in Secretarial Order No. 2508 of January 11, 1949 (14 F. B. 258-260) and Order No. 551 of the Commissioner of Indian Affairs, dated March 29, 1951 (16 F. ft. 2939-2940).
A little later that same day, July 23, 1953, the superintendent of the Fort Berthold Indian Agency was at the Aberdeen area office on other business and learned from Barnes that the plaintiffs’ offer was being accepted by the area director. The agency superintendent at this time was against acceptance of the offer as not being in the best interests of the tribe whose funds would have been used for the purchase.
10. The superintendent’s objections to accepting the plaintiffs’ offer were discussed with Mr. Cooper, the area director, who instructed the agency superintendent to take the offer back to the Fort Berthold Indian Agency for review by the full tribal council of the Three Affiliated Tribes, and to furnish him with a further recommendation in the matter thereafter. It was agreed that in the meantime no further action with respect to the plaintiffs’ offer would be taken and no one was to be notified or informed that the area director had endorsed an acceptance on the offer until the full tribal council had had an opportunity to consider the offer.
11. The next day, July 24, 1953, the superintendent returned to the Indian agency at Elbowoods, North Dakota, taking with him in a sealed envelope the plaintiffs’ offer of July 2, 1953, which bore the endorsement of acceptance by the area director. The superintendent then notified the chairman of the tribal council and Mr. Slobojan that the matter of the proposed purchase of the Slobojan property would be considered by the full tribal council in special session on August 6,1953.
12. The tribal council, after a lengthy discussion, voted on August 6,1953, against purchasing plaintiffs’ property. The superintendent advised the area director of this fact by memorandum dated August 7, 1953, and returned plaintiffs’ offer of July 2, 1953, together with related papers to the area director.
*634 13. On August 12,1953, the area director made the following notation at the bottom of plaintiffs’ offer of July 2,1953:
The acceptance of this offer is hereby rescinded.
14. By registered letter dated August 14, 1953, addressed to the plaintiff John Slobojan, Garrison, North Dakota, which was duly received and receipted for, the area director notified the plaintiffs in part as follows:
Under date of April 17,1953 you executed an offer to sell lands to the United States covering the NE/4 SW/4, Sec. 36, T. 148 N., R. 89 W., and Lot 1, Sec. 2, T. 147 N., R. 89 W., 5th P. M., Motean County, North Dakota. The offer was ambiguous as to the mineral rights which you would be conveying and which you would be retaining. Consequently, on July 2, 1953 you executed an offer to sell lands to the United States covering the above described lands, said offer setting forth in detail the mineral rights which would be reserved and which would be conveyed. At the time the substitute offer was prepared we informed you that we could not promise that the offer would be accepted. We advised you that it would be necessary for the matter to receive further consideration by the Tribal Council of the Three Affiliated Tribes of the Fort Berthold Reservation and by the Superintendent.
Under date of August 6 the Tribal Council of the Three Affiliated Tribes considered the proposed purchase of the lands described above and voted to disapprove the purchase. It was essential that the case be considered by the Tribal Council as Tribal funds would have been used to acquire the tract if it had been approved for purchase. In view of the action taken by the Tribal Council, this office has officially disapproved the offer to sell lands to the United States, said offer being dated July 2, 1953. You are hereby released from all terms of said offer and you may make such disposition of the lands as you see fit.
15. The plaintiffs’ offer of July 2,1953, was not returned with the area director’s letter of August 14, 1953, rejecting the offer, but was mailed to the plaintiffs’ attorney at Garrison, North Dakota, on August 27, 1953, in response to a letter from him dated August 21,1953, requesting its return. The offer of July 2, 1953, remained in the complete custody and control of officials of the Aberdeen area office or the Fort Berthold Indian Agency from the time it was submitted by *635 the plaintiffs until several days after the plaintiffs were notified that the offer had been rejected.
The evidence conclusively establishes that the plaintiffs were not informed of or had any knowledge concerning the endorsement of acceptance by the area director on their offer of July 2,1953, until the acceptance had been withdrawn and rescinded by the area director and the plaintiffs notified that their offer had been rejected.
16. The plaintiffs failed to introduce or offer any evidence on the question of damages, but at the hearing they tendered a deed dated September 22,1953, to the United States in trust for the Three Affiliated Tribes of the Fort Berthold Indian Reservation, covering the property described in their offer of July 2, 1953, and have demanded judgment against the United States for the full purchase price of $20,123.10.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are not entitled to recover, and the petition is therefore dismissed.