**DELCO ELECTRONICS CORPORATION**

v.

**The UNITED STATES.**

No. 97–86C.

United States Claims Court.

May 22, 1987.

Clarence T. Kipps, Jr., Washington, D.C., for plaintiff; John C. Thede and Alan C. Brown, of counsel.

Michael T. Paul, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant; Ltc. Roger Graham and Ward Buckles, U.S. Air Force, of counsel.

## OPINION

MARGOLIS, Judge.

Plaintiff Delco Electronics Corporation sued to recover an equitable adjustment of $32.3 million under a contract with the U.S. Air Force. The defendant agrees that the plaintiff is entitled to an equitable adjustment, but asserts that the amount of the adjustment is limited by a not-to-exceed (NTE) offer of $14.2 million that was accepted by the defendant. The sole issue for decision is whether the NTE offer was accepted by the defendant. Trial was held on this issue in Washington, D.C. on March 10–11, 1987. After review of the entire record, the court finds that there was no acceptance of the plaintiff's NTE offer, and that the amount of the adjustment due the plaintiff is not limited to that amount.

## FACTS

On December 14, 1981, the Air Force awarded contract number F34601–82–C–0180 (contract 0180) to General Motors Corporation; the contract was subsequently transferred to Delco Electronics Corporation. Contract 0180 covered design and production of a fuel savings advisory and cockpit avionics system (FCAS) for KC–135 and other series–135 aircraft. The total amount of contract 0180 at the time of award was approximately $88 million, although the contract was not fully funded. A major component of the FCAS system was the "fuel panel," the component for which funding is at issue here. The fuel panel consists of an integrated fuel management and center-of-gravity system for the aircraft.

The contract originally provided that the fuel panel would consist of a single unit occupying the entire console area forward of the throttle quadrant of the aircraft instrument panel. During January of 1982 the defendant initiated a change to the instrument panel that required a radar scope to share the area of the panel that originally was to be occupied solely by the fuel panel. As a result of this change, substantially less space was available for the fuel panel and a complete redesign was required. The contracting officer (CO) requested a NTE price for this change, which Delco supplied. Delco offered an NTE price by telegram and stated that the offer could be accepted by a return telegram specifying the contract modification number by a date certain. The defendant requested an extension of time to accept this offer, which was granted by the plaintiff; the defendant did accept this offer, however, by providing the plaintiff with modification number P00002 to contract 0180. Modification P00002 was subsequently signed by both parties and was effective on March 5, 1982. As a result of P00002, up to $4.6 million was available to plaintiff for the then-current quantities required of fuel panels under contract 0180.

In June of 1982 plaintiff learned that the redesigned fuel panel would not fit in some series–135 aircraft because of a large throttle quadrant in those aircraft. The existence of those large throttle quadrants had been unknown until that time. This problem resulted in the requirement for another redesign of the fuel panel to fit into an even smaller area of the instrument panel. The defendant requested another NTE price for the second fuel panel change. On July 16, 1982 plaintiff provided by telegram a NTE price of $17.7 million. The telegram specified that the offer was effective until July 28, 1982 and could be accepted by telegram until that date by provision of a modification number to contract 0180. Defendant believed the NTE amount was excessive, and discussions followed concerning ways to lower the offer. By telegram of July 27, 1982, plaintiff revised the NTE price to a total of $14.2 million for the entire contract quantity. This telegram incorporated the manner of acceptance of the July 16 telegram, i.e., a telegram providing a contract modification number by July 28, 1982. It is undisputed that this offer expired without acceptance.

By telegram of August 10, 1982 plaintiff provided another offer that it believed would alleviate the problem of wasted effort toward design of an obsolete fuel panel configuration and would, in addition, allow it to make firm commitments with its suppliers within sufficient time to meet contract 0180 deadlines. This telegram offer confirmed that sufficient P00002 funds remained to perform the engineering design work and proposed to use the unspent portion of the existing basic contract and option I funds ($4.6 million) to complete the design work on the second revised fuel panel, and requested direction from the CO to so proceed. The offer also requested confirmation that a contract modification encompassing the NTE prices in the July 27 telegram would be received by plaintiff by November 10, 1982. The August 10, 1982 offer further stated that all other terms of the July 27 offer (and thus the July 16 offer) remained the same. The August 10, 1982 telegram stated, in part:

IN ACCORDANCE WITH OUR TELECON DISCUSSIONS DELCO IS PLEASED TO FURNISH THE FOLLOWING INFORMATION.

\* \* \* \* \* \*

IN THIS REGARD AIR FORCE TELEX DIRECTION TO (A) PROCEED WITH ENGINEERING DESIGN EFFORT FOR THE REVISED FUEL PANEL AS PROPOSED IN DELCO TELEX M–72–206–1.5.6 DATED 27 JULY 1982 UTILIZING P00002 FUNDING OF $4,612,606 AND (B) INDICATE THAT APPROPRIATE CONTRACTUAL AUTHORIZATION OF THE NOT–TO–EXCEED PRICES CITED IN DELCOS 27 JULY 1982 TELEX WILL FOLLOW BY 10 NOVEMBER 1982.

EXCEPT AS SET FORTH ABOVE THE 27 JULY 1982 TELEX REMAIN [sic] UNCHANGED.

Considering in the aggregate the language of the plaintiff's telegrams of July 16, July 27, and August 10, 1982, the offer telegram of August 10, 1982 established that the method of acceptance of the NTE price offer in the telegram of July 27 was a contract modification encompassing the

changes that was received by plaintiff by November 10, 1982.

On August 12, 1982 the CO sent a telegram in response to that of plaintiff. The telegram stated:

PURSUANT TO DELCO MESSAGE M–82–219–1.5.6 DATED 10 AUG 82, DELCO ELECTRONICS DIV GMC IS HEREBY DIRECTED TO PROCEED WITH ENGINEERING DESIGN EFFORT FOR THE REVISED FUEL PANEL. YOU ARE AUTHORIZED TO PROCEED WITHIN THE DOLLAR THRESHOLD OF THE NOT–TO–EXCEED OF $4,612,606.00 AS ESTABLISHED BY P00002 TO SUBJECT CONTRACT. A CONTRACT MODIFICATION ENCOMPASSING P00002 AND THE REVISED FUEL PANEL AS PROPOSED IN DELCO MESSAGE M–72–206–1.5.6 DATED 27 JUL 82 WILL BE FORTHCOMING. IN ORDER TO FACILITATE APPROPRIATE FUNDING, REQUEST DELCO SUBMIT THE NOT–TO–EXCEED PRICES BY CONTRACT LINE ITEM NUMBER (CLIN)....

The record contains evidence of communication between plaintiff and defendant during the period August 12, 1982 and November 10, 1982 concerning the status of the contract modification accepting the July 27 NTE prices. On November 10, 1982 the CO informed the plaintiff that she expected the contract modification to be issued by the end of November. The record is also clear that in January of 1983 a disagreement arose between the parties as to whether the July 27, 1982 NTE price offer had in fact been accepted. In any event, it is undisputed that the contract modification encompassing the July 27, 1982 NTE prices, P00017, was unilaterally issued by the defendant on May 2, 1983. Plaintiff filed a certified claim for the amount it claims is due for the revised fuel panel change; the claim was denied by the CO on January 6, 1986.

## DISCUSSION

Plaintiff asserts that the defendant did not accept the August 10, 1982 NTE offer, that the August 12, 1982 telegram was not

the "acceptance" required by the offer, that the offer did not permit acceptance by incremental funding of the revised fuel panel change, and that it is the defendant's burden to prove the existence of an agreement to the NTE amount. As a part of these arguments the plaintiff claims that the CO did not intend to accept the NTE offer, that the CO lacked authority to issue a contract modification on August 12, 1982 and therefore could not have accepted the NTE offer, and that funding was not available for the second fuel panel change on August 12, 1982 and therefore the offer could not be accepted. Defendant vigorously disputes these contentions. Because the court believes that this dispute is resolved by evaluation of the language of the offer and purported acceptance, and by the failure of the condition which would have constituted acceptance, most of these allegations need not be addressed in detail.

 To support finding a contract, the evidence must show that the parties intended to be bound; a definite offer and an unconditional acceptance of all its terms must be established. *Estate of Bogley v. United States*, 206 Ct.Cl. 695, 704–05, 514 F.2d 1027, 1032 (1975); *City of Klawock v. United States*, 2 Cl.Ct. 580, 584 (1983), *aff'd*, 732 F.2d 168 (Fed.Cir.1984). The offeror may prescribe the precise method of acceptance, *Lomas & Nettleton Co. v. United States*, 1 Cl.Ct. 641, 644 (1982), and acceptance must occur within those parameters and within the time specified, *Restatement (Second) of Contracts* § 41 (1981).

Defendant asserts that its telegram of August 12, 1982 "directed" plaintiff to utilize unspent P00002 funds to proceed with redesign of the fuel panel and also "authorized" Delco to proceed with the second revised fuel panel effort pursuant to plaintiff's NTE offer of $14.2 million. This action, asserts defendant, constitutes compliance with the methods of acceptance set forth in plaintiff's August 10, 1982 telegram and constitutes acceptance of plaintiff's offer. However, review of the language of defendant's August 12, 1982 telegram indicates that, although it did "di-

rect" and "authorize" beginning the redesign effort, it did so only to the extent of the previously-issued contract modification P00002 amount of $4.6 million. In addition, the language of the August 12 telegram itself indicates that the defendant acknowledged that a contract modification encompassing the July 27, 1982 NTE price offer was necessary, and that it would be "forthcoming."

Defendant's assertion that the offer was accepted merely by the sending of the August 12, 1982 telegram, and that a contract modification was not necessary, is not supported by the language of either the plaintiff's three telegrams taken together, which constitute the offer, or of the defendant's purported acceptance telegram of August 12, 1982. The court finds that the language, taken together, of the plaintiff's three telegrams and the defendant's reply constitute an offer and a conditional acceptance. Plaintiff has consistently claimed that what it requested for acceptance of the NTE offer in its August 10 telegram was 1) confirmation that a contract modification would be issued, and 2) a contract modification actually issued by November 10, 1982. This interpretation clearly contemplates authorization of a contract modification as long as the modification was received by the plaintiff by November 10, 1982.

 "Conditional" acceptance, while potentially fatal to contract formation in most circumstances, is not fatal to government contracts. *See* J. Cibinic & R. Nash, *Formation of Government Contracts* 174–77 (2d ed. 1986). If the condition occurs, both parties are bound. *Thomson v. United States*, 174 Ct.Cl. 780, 791–92, 357 F.2d 683, 690–91 (1966); *Escote Manufacturing Co. v. United States*, 144 Ct.Cl. 452, 458, 169 F.Supp. 483, 488 (1959). If the condition does not occur, neither party is bound. *Russell Corp. v. United States*, 210 Ct.Cl. 596, 608–13, 537 F.2d 474, 482–84 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977).

 Defendant asserts that the CO at all times had the authority to accept the NTE offer of $14.2 million; plaintiff disputes

this allegation. However, the court does not believe that this issue is determinative of the question of acceptance. The plain fact is that the CO did not issue a contract modification encompassing funding for the $14.2 million covering the second fuel panel revision before the specified date of November 10, 1982, although in the August 12, 1982 telegram the CO stated that the contract modification would be "forthcoming." Regardless of the existence of the CO's "authority," the modification was *not* issued within the time specified in the offer. The offer thus died.

## CONCLUSION

The defendant's action needed to fulfill the condition necessary to constitute acceptance of the plaintiff's *not-to-exceed* offer of $14.2 million for the second fuel panel change to the FCAS contract 0180 did not occur; the offer thus expired. The plaintiff is not limited to payment of the expired not-to-exceed amount of $14.2 million for this second fuel panel change. The amount of money owed the plaintiff as a result of this second fuel panel change is to be determined in further proceedings.