**James L. GREGORY and Somerset Investments, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 94–609C.

United States Court of Federal Claims.

Feb. 25, 1997.

Harry R. Blackburn, Philadelphia, Pennsylvania, for plaintiffs.

Brian S. Smith, Civil Division, United States Department of Justice, Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director, for defendant.

## OPINION

MARGOLIS, Judge.

This case arises from the government's refusal to go forward with a Farmers Home Administration ("FmHA") loan to the plaintiffs for the construction of a housing project in Tooele, Utah. Plaintiffs allege that, by refusing to close the loan, the government has committed a breach of contract, as well as a breach of an implied duty of good faith and fair dealing in carrying out its contractual obligations to the plaintiffs. The case is currently before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction and plaintiffs' cross-motion for summary judgment. Defendant argues that this Court lacks jurisdiction to consider the merits of plaintiffs' claim because a contract was never formed between plaintiffs and the government. After considering the briefs and oral argument, the Court agrees with the government that a contract was never formed between plaintiffs and the government. Consequently, defendant's motion to dismiss is granted, and plaintiffs' cross-motion for summary judgment is denied.

## FACTS

Plaintiff, James L. Gregory, is a general partner in plaintiff Somerset Investments, a limited partnership that has its principal place of business in the State of Nevada. On June 17, 1992, Gregory submitted an application, on behalf of Somerset Investments, for a loan from the Farmers Home Administration ("FmHA"). The particular type of loan that Gregory applied for—commonly referred to as a "Section 515 loan"—is authorized by Section 515 of the National Housing Act of 1949, 42 U.S.C. § 1485(a), and is intended to assist private developers in providing rental housing to elderly, handicapped and low income persons in rural areas. Gregory and Somerset apparently intended to use the proceeds from the Section 515 loan to finance the construction of a 21–unit, multi-family housing project known as "Somerset II Apartments" in Tooele, Utah.

Gregory's June 17 application included a standard form, Form FmHA 1944–51, entitled "Certification Approval." Among other things, Form 1944–51 includes a section for the applicant to certify that he or she qualifies for FmHA assistance and will comply with FmHA regulations and other requirements. USDA–FmHA Form 1944–51 (4–85). Gregory provided the applicant's certification, on behalf of Somerset Investments, by signing and dating the appropriate section of Form 1944–51 on June 17, 1992.

Form 1944–51 also includes a section for an official from FmHA to certify that the applicant qualifies for FmHA assistance. By signing this section of Form 1944–51, the approving official certifies that

all of the committee and administrative determinations and certifications required by Farmers Home Administration regulations prerequisite to providing assistance of the type indicated above have been made and that evidence thereof is in the docket, and that all requirements of pertinent regulations have been complied with. I hereby approve the above-described assistance in the amount set forth above, and by this document, subject to the availability of funds, the Government agrees to advance such amount to the applicant for the purposes of and subject to conditions prescribed by Farmers Home Administration regulations applicable to this type of assistance.

USDA–FmHA Form 1944–51 (4–85). The approving official's certification portion of Gregory's application was completed by E.

Lee Hawkes, the State Director for FmHA's Utah Office, who signed and dated the appropriate section of Form 1944–51 on August 17, 1992.

Although Hawkes completed the approving officer's certification on August 17, 1992, the executed form was never delivered to Gregory or to Somerset Investments. Instead, the first formal communication from FmHA to Gregory concerning the Section 515 loan application came in a letter from Hawkes to Gregory, dated October 8, 1992, in which Hawkes informed Gregory that his loan request had been denied. Hawkes' October 8 rejection letter first informed Gregory that, under FmHA regulations, an application for a Section 515 loan will not be granted if the applicant has an interest in existing Section 515 projects that "are not in full compliance with FmHA regulations, directives, and the borrower's Loan Agreement." The October 8 letter further informed Gregory that FmHA had "determined that Section 515 projects in the State of Utah and adjacent states in which you [Gregory] hold an ownership interest are not in full compliance with FmHA regulations, directives and your Loan Agreement...." In particular, Hawkes identified the following deficiencies in Gregory's existing Section 515 projects: "Cash reserves are not being kept up to date, failure to provide annual and monthly reports when due, failure to promptly pay taxes and insurance when due, maintain required fidelity bond coverage, tenant security deposit accounts not maintained, and adequate management to assure successful operation of the project is not provided." As a result of these alleged infractions, Hawkes informed Gregory that his June 17 Section 515 loan request had been denied.

Following his receipt of Hawkes' October 8 rejection letter, Gregory filed an appeal with FmHA's National Appeals Staff challenging the Utah Office's decision to deny him a Section 515 loan for the Somerset II project. A hearing was held on December 15, 1992, before David B. Vaughn, a hearing officer from FmHA's National Appeals Staff. After reviewing the record, Vaughn concluded that FmHA's decision to deny Gregory's loan application was "not based upon FmHA Instructions and [was] not supported by the facts. Based on this conclusion, FmHA's decision must be reversed." Letter from Vaughn to Gregory, "Appeal of Denial of Multi Family Housing Loan Application," NAS Log # 93000248W (January 11, 1993). In reaching his decision, Vaughn reasoned that

> FmHA should not have denied your application until they had first made every reasonable effort to make workout agreement with you regarding any defects in the operation of any [Section 515] projects in which you were a principal. The record shows that no such effort had been made, or attempted, at the time of the decision to deny your application. Further, if workout plans are agreed upon, the matters resolved by these workout plans may not be cause for denial of your application.

*Id.* Vaughn's opinion concluded by informing Gregory that Vaughn's decision would not become "administratively final until 12 working days after your receipt of this letter," *id.*, and that during the intervening period of time, "FmHA may request a review of the legality of this decision. If such a request is made and found to have merit, you will be informed at that time of what further action will take place." *Id.*

On January 15, 1993, Hawkes wrote to the FmHA Administrator in Washington, D.C., requesting a review of hearing officer Vaughn's decision concerning Gregory's Section 515 loan application. On February 1, 1993, Gregory received a letter from Frederick R. Young, Director of FmHA's National Appeals Staff, informing Gregory that Hawkes' request for a review of the hearing officer's decision had merit, and that as a result, Vaughn's decision could not be implemented. Letter from Young to Gregory, Appeal # 93000248W (February 1, 1993). Young informed Gregory that he would be given the opportunity to have a new hearing to determine the fate of his Section 515 loan application. *Id.* Young also informed Gregory that he could waive his right to a hearing, and could instead submit written comments and allow FmHA's National Appeals Staff to issue a final decision based on the written record. *Id.*

As provided for in Young's February 1 letter, Gregory elected to submit written comments and allow the FmHA National Appeals Staff to conduct a review of the record. Letter from Young to Gregory, Appeal # 93000248 UT–RRH (March 25, 1993). After conducting its review, the National Appeals Staff concluded that FmHA's original "decision denying your section 515 loan request should be upheld." *Id.* The Appeals Staff concluded that, contrary to Vaughn's decision, "FmHA did follow their regulations in denying your eligibility for a Section 515 loan. Therefore, we must uphold FmHA's denial of your Section 515 loan request." *Id.*

Following the National Appeals Staff's March 25 decision, Gregory twice requested that Young reopen the case. Gregory argued that FmHA regulations require that a hearing *must* be held whenever the National Appeals Staff reviews the decision of a hearing officer. According to Gregory's interpretation of the regulations, Young erred by inviting Gregory to waive the required hearing and instead permit the National Appeals Staff to conduct a review based solely on the existing record and Gregory's written comments. Young refused to reopen the case, however, and this suit followed.

## DISCUSSION

■ The government has moved to dismiss plaintiffs' case for lack of subject matter jurisdiction under RCFC 12(b)(1) because, the government argues, there is no valid contract between plaintiffs and the United States. Specifically, the government contends that FmHA's partial execution of Form 1944–51 on August 17, 1992, did not result in the formation of a binding contract because FmHA never communicated its purported "approval" to plaintiffs. Therefore, the government argues, this Court lacks jurisdiction to consider the merits of plaintiffs' claims. The Court agrees with the government's position that a contract was not formed between plaintiffs and the United States because Form 1944–51 was not fully executed and was not delivered to plaintiffs. Therefore, dismissal of plaintiffs' claim is warranted. However, for the reasons set forth below, the Court concludes that plaintiffs'

claims should be dismissed, not for lack of subject matter jurisdiction, but instead because plaintiffs have failed to state a claim upon which relief can be granted.

### A. Dismissal for Lack of Jurisdiction

■ The jurisdiction of this Court is defined by the Tucker Act, 28 U.S.C. § 1491, which provides in part that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). "When subject matter jurisdiction is questioned, the non-moving party bears the burden of establishing the court's jurisdiction." *Pevar Co. v. United States,* 32 Fed.Cl. 822, 824 (1995) (citing *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir.1988)). The Court of Appeals for the Federal Circuit recently explained that "[t]o show jurisdiction in the Court of Federal Claims, [the nonmoving party] must show that either an express or implied-in-fact contract underlies its claim. A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction." *Trauma Service Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997) (citing *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686 (Fed.Cir.1992)). Applying this standard to the case before it, the court in *Trauma Service* concluded that the nonmovant's "complaint alleges that an express, and in the alternative, an implied-in-fact contract underlies its claim. This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims." 104 F.3d at 1325 (citing *Gould, Inc. v. United States,* 67 F.3d 925, 929 (Fed.Cir.1995); *Do–Well Mach. Shop, Inc. v. United States,* 870 F.2d 637, 639–40 (Fed.Cir.1989)); *see also Spruill,* 978 F.2d at 689.

In the present case, as in *Trauma Service,* plaintiffs have satisfied their burden to overcome the government's initial challenge to jurisdiction. Plaintiffs allege in their complaint that "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1491 because the action is against the United States and is founded upon an express or implied contract with the

United States." Plaintiffs also allege that FmHA approved the Somerset loan on August 17, 1992, and that this approval resulted in the formation of a valid and binding contract between plaintiffs and the United States. The Court finds that these allegations alone demonstrate that plaintiffs' claims are founded on an express or implied-in-fact contract. Therefore, plaintiffs' claims fall within the jurisdiction of this Court. The argument advanced by the government in its motion to dismiss—that the complaint should be dismissed because there is no valid contract between the plaintiffs and the government—goes beyond challenging the complaint on its face, and attacks the merits of plaintiffs' case. As the Court of Appeals for the Federal Circuit has observed, however, " '[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which [the nonmovant] could actually recover.' " *Do–Well Mach. Shop,* 870 F.2d at 639 (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)).

### B. Dismissal for Failure to State a Claim Upon Which Relief Can be Granted

■ Where defendant's motion to dismiss for lack of jurisdiction challenges plaintiff's case on the merits, as it does in this case, the court should "treat defendant's RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a RCFC 12(b)(4) motion to dismiss for failure to state a claim upon which relief can be granted." *Hare v. United States,* 35 Fed.Cl. 353, 354 (1996), *aff'd,* 108 F.3d 1391 (Fed.Cir.1997) (Table); *see also Peckmann v. Thompson,* 966 F.2d 295, 297 (7th Cir.1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a ... motion to dismiss for failure to state a claim upon which relief can be granted.") Accordingly, this Court will treat defendant's motion to dismiss under Rule 12(b)(1) as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(4).

"[I]t is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed. Cir.1989). Furthermore, a complaint should not be dismissed for failure to state a claim "unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet,* 873 F.2d at 1416 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see* RCFC 12(b)(4). Applying these standards to the case before us, the Court finds that plaintiffs can prove no set of facts showing the existence of a contract, either express or implied, that would entitle plaintiffs to relief in this Court.

### 1. Express Contract

It is well-settled that "communication of an acceptance must be made before a valid contract can come into being." *Emeco Indus., Inc. v. United States,* 485 F.2d 652, 202 Ct.Cl. 1006, 1013 (1973); *see also Slobojan v. United States,* 136 Ct.Cl. 620, 626, 1956 WL 8362 (1956) ("[W]here the validity of a bilateral contract is involved it is necessary that acceptance of the offer be communicated to the offeror before a valid and binding contract is made."); *Thanet Corp. v. United States,* 591 F.2d 629, 219 Ct.Cl. 75, 83 (1979) ("The general rule is that if an offer is of such a kind that the offeror needs to know of the acceptance in order to determine its subsequent action, and the offeree has reason to know this, a notice of acceptance must be given."); *Stevens v. United States,* 21 Cl.Ct. 195, 203 (1990) ("[N]o one with authority to bind the government ever returned a signed acceptance to the partnership, and thus, no contract was formed."); *Romala Corp. v. United States,* 20 Cl.Ct. 435, 443 (1990) ("It is settled in this court that an unqualified acceptance is effective when it is communicated to the offeror."), *aff'd,* 927 F.2d 1219 (Fed.Cir.1991).

It is also "well settled, of course, that an offeror may prescribe the precise manner in which an offer must be accepted." *Lomas & Nettleton Co. v. United States,* 1 Cl.Ct. 641, 644 (1982) (citing Restatement (Second) of Contracts § 30 (1981)); *accord Delco Elecs. Corp. v. United States,* 12 Cl.Ct. 367, 370 (1987), *aff'd,* 909 F.2d 1495 (Fed.Cir.1990) (Table). When the offer prescribes a certain mode of acceptance, "acceptance must occur within [the] parameters" specified. *Delco,* 12 Cl.Ct. at 370; *see also Lomas & Nettleton,* 1 Cl.Ct. at 644 (holding that, when a particular manner of acceptance is unambiguously specified in the offer, acceptance in the manner specified is a condition precedent to the formation of a contract).

In this case, the exclusive mode of acceptance was set forth in FmHA Form 1944–51 ("the approval form"), a form that was included in Gregory's loan application and signed by Gregory on behalf of Somerset. In addition to sections for the signature of the applicant and the approving official, Form 1944–51 contains the following section concerning the government's communication of its acceptance/approval of the loan application:

51. TO THE APPLICANT: As of this date __[blank]__, this is notice that your application for the above financial assistance from the Farmers Home Administration has been approved, as indicated above, subject to availability of funds and other conditions required by the Farmers Home Administration. If you have any questions contact the District Director.

USDA–FmHA Form 1944–51 (4–85). The plain language and the structure of this form unambiguously indicated that the government would notify Gregory that the Somerset loan application had been approved by delivering the executed Form 1944–51.

The requirement that FmHA notify Gregory of its approval/acceptance by executing and delivering the approval form is found not only in the language and structure of Form 1944–51, however. Acceptance in this manner is required by FmHA regulations and the corresponding rules. FmHA regulations mandate that "[w]hen a [Section 515] loan is approved, [Form FmHA] 1944–51 *will be completed* according to the instructions on the Forms Manual Insert." 7 C.F.R. § 1944.246(b)(2)(i) (emphasis added). The Forms Manual Insert, in turn, requires that FmHA personnel deliver a copy of the executed approval form to the applicant upon approval of the loan. Specifically, the Insert specifies, under the heading "DISTRIBUTION OF COPIES," that FmHA distribute a "[s]igned copy [of Form 1944–51] to applicant. This notification must be mailed to the applicant on or before the obligation date." Forms Manual Insert—Form FmHA 1944–51 at 2. The Insert also directs FmHA personnel to

[e]nter the date this notice is sent to the applicant. It is mandatory for all loan/grant programs to obtain initials on the original (above and to the right of the date) by an FmHA employee(s), designated by the State Director, to indicate that a copy of Form FmHA 1944–51 was sent to the applicant. Initials on the original indicate that a notification copy of Form 1944–51 was distributed to the applicant on the date indicated in accordance with FmHA Instructions.

Forms Manual Insert—Form FmHA 1944–51 at 13. These regulations clearly demonstrate, then, that execution and delivery of the approval form represents the exclusive manner of communicating the government's approval/acceptance of a loan application.

Plaintiffs in this case concede that an executed copy of Form 1944–51 was never delivered to Gregory or Somerset Investments. Counsel for both parties agreed at oral argument that Form 1944–51, which was partially executed by Hawkes on August 17, 1992, was never actually delivered by the government to Gregory or Somerset Investments.[1] Furthermore, the undisputed facts in this case

---

1. Counsel agreed that Gregory first obtained the August 17 "approval" during the discovery phase of Gregory's earlier administrative appeal concerning the Somerset loan application. In addition, plaintiffs allege in their Complaint that "[n]otification of the August 17 Approval was improperly concealed from Plaintiffs by Hawkes." Complaint at 3.

show that FmHA personnel never completely executed Form 1944–51 as required by FmHA regulations. *See* Complaint at Attachment A. Specifically, FmHA never provided the date of notification, and never supplied their initials to indicate that Gregory had been notified of FmHA's preliminary loan approval. *Id.* Absent execution and delivery of an approval form in the manner required by the terms of Form 1944–51 and by FmHA regulations, plaintiffs cannot prove the formation of an express contract.

In a supplemental affidavit filed with the Court, however, plaintiffs allege for the first time that FmHA's "approval" of Gregory's Section 515 loan application was indirectly communicated to Gregory in August or September of 1992. Specifically, plaintiffs allege that the following communication took place between FmHA and Gregory:

> In late August or September of 1992, during a telephone conversation with personnel in the FmHA Utah office, I learned that my loan application had been submitted to FmHA's national pool for funding. At that time, based on my past experience in applying for Section 515 Loans, I was aware that my loan application could not have been submitted for funding without Hawkes first executing the August 17 Approval. Accordingly, prior to my receipt of Hawkes' October 8, 1992 letter denying my application, FmHA had already effectively communicated to me that Hawkes had executed the August 17 Approval and that a loan agreement had, therefore, been formed between FmHA and Somerset.

"Plaintiffs' Reply Brief to Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss, etc." Supplemental Affidavit of James L. Gregory, filed on October 2, 1996 (paragraph numbers omitted).

Even assuming, *arguendo*, that the allegations contained in Gregory's supplemental affidavit are true, and viewing those facts in the light most favorable to plaintiffs, plaintiffs still cannot prove that a contract was formed. Gregory has not alleged that the executed Form 1944–51 was, in fact, delivered to plaintiffs as required by FmHA regulations.[2] Instead, Gregory argues only that his conversation with FmHA personnel led him to deduce, based on his personal experience, that someone at FmHA had executed the approval form before submitting Gregory's application to the national pool. Although Gregory's reasoning may have been perfectly logical, his alleged conversation could not be construed as a valid acceptance by the government because FmHA was required, by regulation, to communicate its approval by delivering a fully executed copy of Form 1944–51 to Gregory.

A similar conclusion was reached by our predecessor court, the United States Claims Court, when confronted with a similar set of circumstances in *Lomas & Nettleton Co. v. United States*, 1 Cl.Ct. 641. In that case, the plaintiffs had submitted an application to the Government National Mortgage Association (GNMA) to purchase options on certain mortgages under a GNMA-run program. 1 Cl.Ct. at 643. Shortly after plaintiffs had submitted their application, however, the program was suspended and plaintiffs' unexecuted application and application fee was returned by GNMA. *Id.* Although plaintiffs' application was returned, plaintiffs argued that a contract to purchase the mortgages had been formed by virtue of a telephone conversation between plaintiffs and a representative of GNMA, wherein the GNMA representative allegedly told plaintiffs "you have a deal" to purchase the mortgages. *Id.* at 643–44.

The Claims Court rejected the plaintiff's argument that his conversation with GNMA formed a binding contract. The court observed that GNMA rules, which were contained in a document entitled "GNMA Seller's Guide," specifically required that "acceptance by GNMA of an application '*shall* be indicated by completing and executing the form of 'Acceptance' provided thereby, and returning one executed copy to the applicant.'" *Id.* at 644 (emphasis added). According to the court, the use of the word "shall" indicated that

---

2. Even if that were the case, Form 1944–51 was never completely executed by FmHA personnel, as required by FmHA rules and regulations. *See*

7 C.F.R. § 1944.246(b)(2)(i); Forms Manual Insert—Form FmHA 1944–51 (9–12–90).

completing and executing the acceptance form was the *required*, and not merely a suggested, manner of acceptance. *Id.* In addition, the court pointed to a long line of authority holding that "when a statute, regulation, or contract requires a written acceptance, an oral acceptance is ineffective." *Id.* The court therefore concluded that "the execution and return of the plaintiff's applications, and the return of the executed copies to the plaintiff, were conditions precedent to the formation of contracts under [the terms of] the GNMA Seller's Guide." *Id.* (citing *Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1178 (D.C.Cir.1980)). Consequently, the court held that plaintiffs' alleged conversation with GNMA did not form a contract. 1 Cl.Ct. at 644. For precisely the same reasons, Gregory's alleged conversation with FmHA personnel could not have given rise to an express contract in the case currently before this Court.

### 2. Implied-in-Fact Contract

■ Having failed to establish the existence of an express contract, plaintiffs argue that the facts as alleged demonstrate the existence of an implied-in-fact contract. However, "[t]he requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs." *Eliel v. United States*, 18 Cl.Ct. 461, 466 (1989), *aff'd*, 909 F.2d 1495 (Fed.Cir.1990) (Table); *see also Nitol v. United States*, 7 Cl.Ct. 405, 415 (1985); *Russell Corp. v. United States*, 537 F.2d 474, 210 Ct.Cl. 596, 609, *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977). To prove the existence of an implied-in-fact contract, then, "plaintiffs must show mutuality of intent, an unambiguous offer, unconditional acceptance, and consideration." *Eliel*, 18 Cl. Ct. at 466; *see also H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Marvel Eng'g Co. v. United States*, 14 Cl.Ct. 614, 618 (1988).

Plaintiffs argue that Hawkes' partial execution of Form 1944–51 on August 17, 1992, and FmHA's alleged forwarding of the Somerset application to the national pool for funding, provide evidence that FmHA did indeed intend to contract with plaintiffs. This Court disagrees. According to the Court of Appeals for the Federal Circuit, agency actions "do not produce a contract implied-in-fact until all steps have been taken that the agency procedure requires; until then, there is no intent to be bound." *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1080 (Fed.Cir.1989); *see also Empresas Electronicas Walser, Inc. v. United States*, 650 F.2d 286, 223 Ct.Cl. 686, 688, 1980 WL 99733 ("[A]n agency does not become bound ... until the ... steps have been taken that [the agency's] procedure requires. Until then, there is no intent to be bound."), *cert. denied*, 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 217 (1980). Once again, the undisputed facts in this case reveal that FmHA did not take *all* steps required by regulations to approve the Somerset loan. Specifically, FmHA did not completely execute the approval form, and did not deliver a copy to plaintiffs. Therefore, as defendant correctly argues, the steps taken by FmHA personnel with respect to the Somerset application were purely internal, and cannot be construed as evidence of acceptance or of an intent to be bound.

The government also correctly points out that the only communication from FmHA to plaintiffs concerning the Somerset application was Hawkes' October 8, 1992 rejection letter. Given the unambiguous terms of Hawkes' letter rejecting the Somerset application, FmHA's other alleged actions cannot possibly be construed as evidence of an acceptance and/or of an intent to contract with plaintiffs. The Court therefore concludes that plaintiffs cannot prove the existence of an implied-in-fact contract.

### 3. Equitable Estoppel

■ Finally, plaintiffs argue that, under the doctrine of equitable estoppel, the government should be barred from denying the existence of a contract between plaintiffs and FmHA. Plaintiffs cite to *Emeco Indus., Inc. v. United States*, 485 F.2d 652, 202 Ct.Cl. 1006 (1973), where the Court of Claims set forth four elements that must be present in

order to establish an estoppel against the government:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

202 Ct.Cl. at 1015. In this case, plaintiffs argue that FmHA "intended to conceal its approval of the loan and to have Plaintiffs accept its representation that the loan had been rejected. Thereafter, in reliance on Defendant's misrepresentations, Plaintiffs were forced to alter their plans with respect to the Somerset project to their financial detriment." Plaintiffs' Response at 18. Consequently, plaintiffs argue that the government "should be estopped from denying the existence of its contract with Plaintiffs." *Id.*

██  Although plaintiffs frame this argument in terms of equitable estoppel, plaintiffs' argument is actually based on the theory of promissory estoppel. The distinction between these two concepts is critical, because the Court of Federal Claims does not have jurisdiction to consider claims based on promissory estoppel. *See Knaub v. United States,* 22 Cl.Ct. 268, 276 (1991); *American Maritime Transport, Inc. v. United States,* 18 Cl.Ct. 283, 292 (1989) (citing *Biagioli v. United States,* 2 Cl.Ct. 304, 308 (1983)). As the Court of Appeals for the Ninth Circuit explained in *Jablon v. United States,* 657 F.2d 1064, 1068 (9th Cir.1981),

> The difference between [these two] doctrines can best be explained by observing that promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. Promissory estoppel is a sword, and equitable estoppel is a shield.

*Accord Knaub,* 22 Cl.Ct. at 276; *American Maritime Transport,* 18 Cl.Ct. at 292; *Durant v. United States,* 16 Cl.Ct. 447, 450 (1988).

In this case, plaintiffs have raised the doctrine of estoppel as a "sword," that is, in an effort to create a cause of action. Specifically, plaintiffs invoke the doctrine of estoppel to establish the existence of a contract upon which to base their claims. As our cases make clear, however, plaintiffs cannot be permitted to establish this crucial element of their case on the basis of estoppel. *See, e.g., Knaub,* 22 Cl.Ct. at 276; *American Maritime Transport,* 18 Cl.Ct. at 292; *Durant,* 16 Cl.Ct. at 450. Therefore, plaintiff's effort to estop the government from challenging the existence of a contract is rejected.

### CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs cannot prove the existence of an express contract or an implied-in-fact contract. Accordingly, defendant's motion to dismiss is granted, and plaintiffs' cross-motion for summary judgment is denied. The clerk will dismiss the complaint. Costs for defendant.