**L. Dale JONES, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–928C.**

United States Court of Federal Claims.

June 7, 2001.

L. Dale Jones, Jr., plaintiff and attorney of record.

M. Jocelyn Lopez Wright, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General David W. Ogden, for defendant.

## OPINION

ALLEGRA, Judge.

In this case, L. Dale Jones, Jr. (Mr. Jones or plaintiff), alleges that the United States Marshal Service (USMS) breached a contract to sell him a parcel of land in Covington County, Alabama. Defendant filed a motion for summary judgment on November 20, 2000, arguing that no such contract was ever formed. Plaintiff opposes this motion, principally on the ground that material issues of fact exist that preclude the granting of summary judgment. Argument is deemed unnecessary. The court hereby **GRANTS** defendant's motion for summary judgment, concluding that there are no material facts in dispute and that there is no evidence that an enforceable contract existed between the parties.

## I. FACTS

On March 7, 14, and 21, 1999, the USMS published an advertisement notifying the public that it had received an unsolicited offer to purchase property located near Country Road No. 20 in Covington County, Alabama. The advertisement described the metes and bounds of the property and invited members of the public to submit a competing offer, indicating:

The amount of the unsolicited offer is $49,600.00. The public is invited to submit an offer of at least $5,000.00 above the unsolicited offer. Offers should be mailed or hand delivered to the United States Marshals Service .... Offers must be received by 5:00 p.m. on March 25, 1999. The advertisement further stated that "[a]fter receipt of all offers, the property will be sold to the highest offeror."

On March 25, 1999, Mr. Jones called Karen Chavers, a Seizure Forfeiture Specialist with the USMS, to inquire whether an offer could be submitted via facsimile. Ms. Chavers responded affirmatively, and Mr. Jones subsequently faxed the USMS a bid of $63,400 on March 25, 1999. At 4:43 p.m. on that day, Mr. Jones called Ms. Chavers to inquire whether he was the highest bidder. Ms. Chavers told Mr. Jones he was the highest bidder at that time, but that the time for receiving bids would not expire until 5:00 p.m. At this point, the parties' version of the facts diverges somewhat—at least allegedly. Relying on Ms. Chavers' affidavit, defendant avers that, in this same conversation, Ms. Chavers also informed Mr. Jones that the USMS was required to contact the original unsolicited bidder to allow him the opportunity to submit his best and final offer, pursuant to the Department of Justice, United States Marshals Service, Asset Forfeiture Office, Real Property Manual.[1] This description of the conversation is consistent with a "Memo for File," dated March 25, 1999, and apparently prepared by Ms. Chavers contemporaneously, in which she wrote:

> At 4:43 p.m. on this date Mr. Jones called me and inquired if he was the highest bidder. I informed him that the time for offers expired at 5:00 that day and unless we received a higher offer within the next 17 minutes he was the highest offeror at

that time. I informed Mr. Jones that we would have to go back to the original offeror and give him an opportunity to submit his best and final offer. I told Mr. Jones that the amount of the highest offer, however, would not be disclosed. I told Mr. Jones that I would contact the offeror tomorrow and that I would get back to him next week to notify him if he was the successful bidder.

Mr. Jones recalls being told that the unsolicited bidder would be given a chance to submit a best and final offer, but believes that information was conveyed in a second, separate conversation, later that same day. However, in his brief, Mr. Jones indicates that he does not now have a specific recollection of the timing and content of the multiple conversations he claims took place.[2]

On March 26, 1999, the original unsolicited bidder faxed the USMS a bid of $65,410 for the property. Ms. Chavers notified the plaintiff, on March 26, 1999, that he was not the successful bidder. By certified letter dated March 29, 1999, Ms. Chavers formally provided plaintiff with the same information.

Plaintiff filed suit in this court on November 8, 1999, claiming that defendant breached a contract entered into on March 25, 1999, for the sale of the property. Plaintiff sought: (i) an injunction on the sale of the property to the unsolicited bidder pending a ruling on the specific performance issue; (ii) an injunction ordering defendant to honor the contract entered into with plaintiff; and (iii) monetary damages caused by the alleged breach of contract. Defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted and for lack of jurisdiction. On July 10, 2000, this court granted, in part, and denied, in part, defendant's motion to dismiss. It held that

---

1. In relevant part, this manual provision states, If any higher offers are received, the unsolicited offeror will be:
   — Notified, although he/she will not be told the amount of the highest offer.
   — Given the opportunity to submit a best and final offer.
   U.S. Dep't of Justice, United States Marshals Service, Asset Forfeiture Office, Real Property Manual 66 (June 1998) [hereinafter USMS Asset Forfeiture Manual].

2. Plaintiff states in his response to defendant's motion for summary judgment that "[a]s stated in Defendant's Statement of Facts, Plaintiff does not remember exact timing or words of conversations. It is undisputed that Defendant does not have an exact recollection either. This set of facts alone should be enough to prove to the Court that a genuine issue of a material fact exists to disallow summary judgment."

there was no jurisdiction over plaintiff's claims for injunctive relief and specific performance, but found there was jurisdiction over plaintiff's remaining claim for monetary damages based on the breach of the contract that allegedly arose between plaintiff and the USMS. Accordingly, the court denied the portion of defendant's motion that challenged the plaintiff's monetary claim and ordered the parties to undertake limited discovery. Following discovery, defendant filed a motion for summary judgment on November 20, 2000, to which plaintiff responded on December 28, 2000. Defendant filed its reply on January 29, 2001, and plaintiff filed a surreply on February 15, 2001.

## II. DISCUSSION

Summary judgment is an "integral part of the Federal Rules," the Supreme Court has stated, and is "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Pursuant to RCFC 56, a party opposing a motion for summary judgment must file a statement of genuine issues in which "[t]he party shall state the precise nature of its disagreement and give its version of the events, supported by record citations." RCFC 56(d)(2). "In determining any motion for summary judgment," that rule further provides, "the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are included in the Statement of Genuine Issues and are controverted by affidavit or other written or oral evidence." RCFC 56(d)(3).

■ In this procedural posture, the issue before the court is, straightforwardly, whether a contract of sale arose between the parties. The following are the requirements for a valid contract with the United States: a mutual intent to contract including offer, acceptance, and consideration, and authority on the part of the government representative who entered into the agreement to bind the United States. *Thermalon Indus., Ltd. v. United States*, 34 Fed.Cl. 411, 414 (1995) (*citing City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied*, 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991)). These requirements apply both to express and implied-in-fact contracts. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1326 (Fed.Cir.1997). Plaintiff bears the burden of proving that each and every one of these requirements was met here. *Total Med. Mgmt., Inc. v. United States*, 104 F.3d 1314, 1319 (Fed.Cir. 1997), *cert. denied*, 522 U.S. 857, 118 S.Ct. 156, 139 L.Ed.2d 101 (1997). Even at this penultimate stage of the proceedings, this burden is important, as the Supreme Court has instructed that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

■ Defendant argues that at least one of the critical elements for the formation of valid contract was missing here—there was no acceptance, it asserts, and as such, no mutual intent to contract. It is well accepted that an offer is accepted by "manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Restatement (Second) of Contracts* § 50 (1979). *See also Buesing v. United States*, 47 Fed.Cl. 621, 634 (2000). Such an acceptance must be unconditional, *see Heydt v. United States*, 38 Fed.Cl. 286, 301 (1997); *Singleton v. United States*, 6 Cl.Ct. 156, 166 (1984), and communicated to the offeror, *see Slobojan v. United States*, 136 Ct.Cl. 620, 626, 1956 WL 8362 (1956); *Gregory v. United States*, 37 Fed.Cl. 388, 392 (1997). *See also Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474, 480 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977). Here, there was no such unconditional acceptance—the USMS, through its representatives, never

stated or otherwise conveyed to plaintiff the message that it had accepted plaintiff's offer. Indeed, the record plainly indicates—and plaintiff does not contest—that the USMS first indicated that plaintiff's offer had not been accepted and then, ultimately, stated that another offer had been accepted.

Plaintiff, however, essentially asserts that because his offer was the highest one received by 5:00 on March 25, 1999, it was somehow automatically accepted under the terms of the published invitation, thereby resulting in an enforceable contract. Even assuming *arguendo* that acceptance of an offer could occur in this fashion,[3] with no apparent or actual intent by the defendant to enter into a contract, it remains that the language of the published invitation is incompatible with the notion that there was automatic acceptance of plaintiff's offer here. To be sure, that invitation indicates that offers from the public "must be received by 5:00 p.m. on March 25, 1999," but it is silent as to whether the original unsolicited offeree would be given a final chance to outbid the public offers. And while the invitation goes on to state that "[a]fter receipt of all offers, the property will be sold to the highest offeror," that language again does not foreclose the possibility that another offer, *i.e.* one received not from the public, but from the original unsolicited offeree, could be submitted after the 5:00 deadline and accepted as the highest offer. Therefore, nothing in the terms of the advertisement stated or even implied that there would be an unconditional and automatic acceptance of plaintiff's offer merely because it was the highest offer received by 5:00 p.m. on March 25, 1999.

The conclusion that there was no acceptance here is reinforced by Ms. Chavers' affidavit and her memorandum to the file, which both indicate that she explicitly told plaintiff, at the time he inquired about his offer, that USMS was required to contact the original unsolicited bidder to afford him the opportunity to submit his best and final offer, pursuant to the USMS Asset Forfeiture Manual. Plaintiff, for his part, asserts that Ms. Chavers first indicated that plaintiff was the highest bidder and then, later in the same day, in a different conversation, first raised the possibility that another offer from the original unsolicited offeror was still anticipated. However, plaintiff admits that he has no definite recollection of the content and timing of these conversations and, in particular, the timing of the conversation in which he was told that the unsolicited bidder could still submit a new bid.[4] Moreover, plaintiff has not contested the authenticity of the memorandum to the file that Ms. Chavers apparently prepared contemporaneously with her conversation with Mr. Jones, which is entirely consistent with her affidavit's version of the facts. In short, while plaintiff does not agree with defendant's factual assertions, he also does not squarely disagree with them either—at least to the extent of providing specific evidence that directly controverts some aspect of the defendant's version of the facts.

In the face of these evidentiary shortfalls, plaintiff, nonetheless, steadfastly maintains that summary judgment is inappropriate

---

3. Notably, plaintiff's complaint focuses only on the alleged contract for the sale of land. Plaintiff neither alleges in his complaint nor argues in his other filings that the defendant violated its duty of good faith and fair dealing in conducting its bid activities. *Cf. Tidewater Mgmt. Servs., Inc. v. United States*, 216 Ct.Cl. 69, 573 F.2d 65, 67 (1978) (discussing this duty). Moreover, even if plaintiff had alleged such a violation, the damages he seeks, essentially representing lost profits on the land transaction, would not be recoverable under that theory. *See Concept Automation, Inc. v. United States*, 41 Fed.Cl. 361, 369 (1998) (awarding disappointed bidders only bid preparation costs where the government breached its implied in fact contract to treat bids fairly).

4. In his deposition, plaintiff stated, "And as me and you discussed before, no, I'm not going to swear with a thousand percent certainty that I wasn't told [the unsolicited offeror would have another opportunity to bid] in that phone call, but I really believe that there was different phone calls when that was told to me." And, later, defendant's counsel asked, "You're saying that you remember receiving all the information . . . , but you don't believe— you don't remember it being in the same phone call, but you don't specifically swear— you can't specifically swear to that, that you didn't write down the details at the time?" Plaintiff responded, "That's correct . . . . I'm not going to sit here and answer life or death, yes or no that that did happen on different phone calls."

here because material facts are disputed. However, there are at least two fundamental problems with this assertion—there do not appear to be any facts reasonably in dispute and certainly none that are material.

First, in the court's view, plaintiff's foggy and incomplete recollection falls far short of what is required to put any facts in dispute here. In this regard, the closest call involves whether there was more than one conversation between plaintiff and Ms. Chavers and the content of those conversations. However, under RCFC 56, this court is obliged to accept, for purposes of this summary judgment motion, defendant's assertion that, when plaintiff called on March 25, 1999, Ms. Chavers specifically informed him that although he was the highest bidder at that point, the unsolicited bidder would be contacted for his final bid before the USMS could accept any offer. Plaintiff's bald assertion to the contrary, standing alone, is insufficient to create a genuine issue of fact. In this regard, the law is clear that where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer specific countering evidence sufficient to create a genuine factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. at 324–25, 106 S.Ct. 2548. In this regard, the Federal Circuit has stated that:

> [T]he court may not simply accept a party's statement that a fact is challenged.... The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984). *See also Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987) ("The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial"); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir. 1987) ("However, the party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient.").

In support of its version of the facts, the defendant has provided an affidavit corroborated by documentary evidence. Plaintiff, for his part, has, at best, responded to that evidence with a general denial and, truth be told, has not even gone that far, but instead seeks to create a question of fact based on his inability to recall definitively the events in question. But, if, under the above case law, a general denial is insufficient to create a question of fact under RCFC 56, then certainly it must be the case that an equivocal general denial has no better standing.[5] In these circumstances, the court deems the material facts claimed and adequately supported by defendant to be established for purposes of the motion. *See* RCFC 56(d)(3).

But, even were this court not to accept all of the defendant's allegations regarding the timing and content of Ms. Chavers' conversation, there are no *material* facts in dispute. Two key and, in the court's view, determinative points remain undisputed—first, that the USMS never communicated any acceptance to plaintiff; and, second, that the language in the invitation does not support plaintiff's claim that there somehow was automatic acceptance of his offer. Hence, even if the court were to indulge plaintiff's version of the facts, summary judgment is still appropriate here because there has been no showing of acceptance and, as such, a "a complete failure of proof concerning an essential element of the nonmoving party's case...." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

---

5. In his surreply brief, plaintiff asserts that "by being a [sic] officer of the Court that his signature should stand as an affirmation alone. Due to the issue raised by the Defendant, Plaintiff swears and affirms by his notarized signature on this document that all his allegations in all briefs are true and correct." Because plaintiff is also the attorney of record in this case, the court accepts his statements as true—but that acceptance does not render his statements any more specific or less equivocal.

Plaintiff cannot defeat the pending motion by simply suggesting that, at trial, his recollection will be refreshed or improved and that he will then come forth with evidence to support his version of the facts and meet his burden of proof. As the Seventh Circuit has noted, "[r]oughly speaking," a motion for summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir.1999). Here, colloquially speaking, plaintiff simply has not "put up" and now cannot "bet on the come," speculating that he might yet cure his patently weak evidentiary hand. Rather, with discovery having now closed in this case, what the Fifth Circuit observed in another similar case seems equally apropos here:

> The parties are not to be trapped into waiving a plenary trial on issues that really exist. But neither is the Judge, the opposition nor the jurisprudence to be trapped by feigning an issue, so nonexistent as to be unrealized by combating adversaries, in order to require a trial not on substantive issues but on ones that at most were merely not expressly negated and at best involved only 'the optimistic hope that something might turn up.'

*DeBardeleben v. Cummings*, 453 F.2d 320, 326–27 (5th Cir.1972) (quoting *Bruce Constr. Corp. v. United States*, 242 F.2d 873, 878 (5th Cir.1957)). While the Federal Circuit has cautioned against grants of summary judgment where required to preserve the rights of an adverse party, it has, nonetheless, held that such a grant is appropriate where no genuine issue of material fact exists, and "the law is such that summary judgment will avoid a 'useless trial.' " *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1403 (Fed. Cir.1984) (quoting *U.S. Steel Corp. v. Vasco Metals Corp.*, 55 C.C.P.A. 1141, 394 F.2d 1009 (C.C.P.A.1968)). *See also Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27 (Fed.Cir.1984). Contrary to plaintiff's claims, such is patently the case here.

## III. CONCLUSION

In this case, defendant placed an advertisement soliciting bids. Plaintiff presented a valid offer, but it was not accepted by the government. Plaintiff has failed to establish any material facts that would suggest that a contract was formed. Accordingly, the government's motion for summary judgment is **GRANTED,** and the Clerk is instructed to dismiss the complaint.

**IT IS SO ORDERED.**